# EXHIBIT 1

ETHAN D. KIRSCHNER, State Bar No. 235556
ethan@kirschner-law.com
**KIRSCHNER LAW, PC**
9696 Culver Blvd., Ste. 301
Culver City, CA 90232
Telephone: (213) 935-0250
Facsimile: (213) 986-3106

*Attorney for Plaintiff*
TIMOTHY LUKAS

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**03/17/2021** at 11:30:25 AM
Clerk of the Superior Court
By Amy Woolf,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

TIMOTHY LUKAS, an individual,

Plaintiff,

v.

THE BC LIONS FOOTBALL CLUB INC., a Canadian corporation; and DOES 1-20, inclusive,

Defendants.

Case No.: 37-2021-00011868-CU-FR-NC

**VERIFIED COMPLAINT FOR:**

**(1) INTENTIONAL MISREPRESENTATION**
**(2) PROMISSORY FRAUD**
**(3) NEGLIGENT MISREPRESENTATION**
**(4) PROMISSORY ESTOPPEL**

**JURY TRIAL DEMANDED**
**PUNITIVE DAMAGES**

COMES NOW Plaintiff TIMOTHY LUKAS ("Plaintiff"), who makes this Complaint and who complains and alleges against Defendants THE BC LIONS FOOTBALL CLUB INC. and DOES 1-20, inclusive ("Defendants"), as follows:

**PARTIES**

1. Plaintiff TIMOTHY LUKAS is an individual who, at all times relevant to this Complaint, resided and worked in Los Angeles County, California, and who currently resides and works in San Diego County, California.

2. Plaintiff is informed and believes and based thereon alleges that Defendant THE BC LIONS FOOTBALL CLUB INC. ("Lions") is a Canadian corporation with a principal place of business in Vancouver, British Columbia, Canada. Plaintiff is informed and believes and based thereon alleges that Defendant is the owner and operator of the BC Lions, a professional football team playing in the Canadian Football League.

3. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are currently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names under Code Civ. Proc. § 474. Plaintiff is informed and believes and based thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known to Plaintiff. Hereinafter, reference to "Defendants" shall include the named Defendants and the DOE Defendants.

4. Plaintiff is informed and believes and based thereon alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

**JURISDICTION AND VENUE**

5. Pursuant to California Code of Civil Procedure Section 410.10, this Court has jurisdiction over Defendants because Defendants' actions and/or omissions as alleged herein were directed at Plaintiff, who, at all relevant times, was a California resident, and Defendants were aware,

at all relevant times, of Plaintiff's California residency. Defendants' actions and/or omissions as alleged herein create a substantial connection between California and the specific claims at issue in this matter. Pursuant to California Code of Civil Procedure Section 395, et seq., venue is proper in this Court because Plaintiff is now a San Diego County resident and was, at all relevant times, a California resident.

**FACTS COMMON TO ALL CAUSES OF ACTION**

6. Plaintiff TIMOTHY LUKAS ("Plaintiff") is a professional football player, originally from Mt. Prospect, Illinois.

7. From 2015 to the present, Plaintiff has maintained an off-season permanent residence in Los Angeles County, California.

8. In 2015, Plaintiff played professional football in Brazil. In 2016, Plaintiff played professional football in Florida in the American Indoor Football Association. In 2017, Plaintiff played professional football for teams in the Indoor Football League (Colorado) and the Arena Football League (Washington). In 2018, Plaintiff played professional football for the Montreal Alouettes, a Canadian Football League ("CFL") team.

9. In September 2018, Plaintiff traveled to British Columbia to work out as a prospect for Defendant THE BC LIONS FOOTBALL CLUB INC. ("Lions"). At that workout, Plaintiff spoke to Lions' Director of Football Operations Neil McEvoy ("McEvoy") and Lions' Director, Player Personnel & Player Development Torey Hunter ("Hunter") and, amongst other things, told them he was living and training in California.

10. In early 2019, Plaintiff and Lions entered into negotiations for Plaintiff's employment by the Lions as a professional football player in the Canadian Football League.

11. The negotiations were agreeable to all parties, and on March 26, 2019, McEvoy emailed Plaintiff a Canadian Football League Standard Player Contract ("3/26 Email" and "Contract"). True and correct copies of the 3/26 Email and Contract are attached hereto as Exhibits A and B.

12. The first line of the 3/26 Email from McEvoy is "Congratulations on signing with the BC Lions."

13.     Pursuant to the Contract, Lions were to employ Plaintiff as a professional football player for the 2019-2020 and 2020-2021 seasons, and were obligated to pay Plaintiff CDN$55,000.00 for the first season and CDN$57,000.00 for the second season, with an option for Lions to retain Plaintiff for a third season in 2021-2022.

14.     Pursuant to an Addendum to the Contract, Plaintiff could earn as much as an additional CDN$7,600.00 for performance related bonuses for the 2019-2020 season.

15.     Pursuant to a Second Addendum to the Contract, Plaintiff could earn as much as an additional CDN$8,500.00 for performance related bonuses for the 2020-21 and option seasons.

16.     The contract packet from the Lions contained a signed statement from McEvoy asking Plaintiff to "keep this signing confidential," which would enable Lions "to strategically select a date to make the announcement to give the club and you significant media exposure. Leaking this to the public via any social media source will ultimately make that impossible and will decrease the impact of the announcement when it is officially made by the club."

17.     Plaintiff signed and returned the Contract to Lions by email to McEvoy on March 29, 2019, and hard copy delivery to Lions of the signed Contract taking place on April 9, 2019.

18.     In McEvoy's emailed response to Plaintiff's March 29, 2019 email returning the executed Contract, McEvoy acknowledged receiving the executed Contract, and stated "I will speak with the equipment manager to see what [uniform] numbers you have asked [about] will be available." A true and correct copy of McEvoy's March 29, 2019 email response to Plaintiff is attached hereto as Exhibit C.

19.     In April 2019, Plaintiff attended a Lions open workout held in Los Angeles at which he knew team personnel would be present. At the workout, Plaintiff spoke with Hunter and Lions' General Manager Ed Hervey ("Hervey"). In that conversation, Hunter and Hervey discussed the upcoming season with Plaintiff and Hervey told Plaintiff that he would see him in British Columbia soon for training camp.

20.     Pursuant to the 3/26 Email, Lions were to book flights for players for May 14, 2019, and the first team practice would take place in Kamloops, British Columbia, Canada on May 15, 2019.

21.     On May 14, 2019, the Lions did not book a flight for Plaintiff.

22.     On May 20, 2019, Plaintiff texted Hunter, stating "Hi Torey, can you give me an update on when I'll be coming up?" That day, Hunter texted back "Wont know until this weeks game reps[.]"

23.     On May 28, 2019, Plaintiff texted Hunter, stating "Mr. Hunter, any updates? My lease in California is up soon so I need to know about arrangements. Are you free to get on the phone to talk about my status and what the plan is?" That day, Hunter texted back "No movement at wr yet[.]"

24.     On May 29, 2019, Plaintiff texted Hunter, stating "OK, please keep me updated. I'm chomping at the bit, ready to go. May I have the playbook (or formations) sent over so I can get on top of it?" That day, Hunter texted back "I will let you know[.]"

25.     A true and correct copy of Plaintiff's May text exchanges with Hunter is attached hereto as Exhibit D.

26.     On May 31, 2019, Plaintiff emailed McEvoy, stating he was "confused about [his] status with the Lions" and that he "would greatly appreciate some clarification." A true and correct copy of the May 31, 2019 email is attached hereto as Exhibit E.

27.     McEvoy did not respond to the May 31, 2019 email.

28.     On August 15, 2019, Plaintiff texted Hunter, stating "Hey Torey any updated timeline for me?" That day, Hunter texted back "Not yet" and "Only carrying 3 Americans wrs that dont pr 1 that does. 3 on roster 1 of which is specialist. 1 on pr[.]"

29.     On August 27, 2019, Plaintiff texted Hunter, stating "Just checking in Torey. Any update on my status?" That day, Hunter texted back "No. Injuries and bye week Looks like we may load DL as priority. I will let you know[.]"

30.     Later on August 27, 2019, Plaintiff texted Hunter, stating "Ok, we still looking at the time around PR expansion? I'm staying ready." That same day, Hunter texted back "Yes[.]"

31.     A true and correct copy of Plaintiff's August text exchanges with Hunter is attached hereto as Exhibit F.

32.     On September 26, 2019, Plaintiff texted Hunter, stating "Hey Coach, any luck on whether I'll be coming up soon?" That day, Hunter texted back "Talkin about next 2 weeks."

33. A true and correct copy of Plaintiff's September text exchanges with Hunter is attached hereto as Exhibit G.

34. Defendants never returned a countersigned Contract to Plaintiff.

35. Defendants never employed Plaintiff as a professional football player for Lions in the 2019-2020 season.

36. Plaintiff is informed and believes and thereon alleges that the average career of a professional football player is quite short,[1] and that to go unsigned for a year can do permanent damage to or even end a professional football player's career. This is because of several reasons, including but not limited to the critical fact that the player generates no game film to be reviewed by potential future employers during the missed year.

37. Plaintiff is informed and believes and thereon alleges that Defendants exploited Plaintiff through their superior experience and bargaining position.

38. Defendants' actions and omissions as detailed herein harmed Plaintiff in an amount to be determined at trial.

## FIRST CAUSE OF ACTION
### Intentional Misrepresentation

39. Plaintiff re-alleges each and every preceding paragraph of this Complaint as though fully set forth herein.

40. In 2019, Lions, through their employees McEvoy, Hunter, and Hervey, falsely represented to Plaintiff the following:

a. Pursuant to the 3/26 Email, McEvoy falsely represented to Plaintiff on March 26, 2019 that Lions intended to contract with Plaintiff for his services;

b. On March 29, 2019, McEvoy falsely represented that Lions intended to contract with Plaintiff for his services in this communication with Plaintiff regarding available uniform numbers;

c. In April 2019, at the Los Angeles open workout, Hunter and Hervey falsely represented that Lions intended to contract with Plaintiff for his services in

[1] *See, e.g.* "The Shrinking Shelf Life of NFL Players," WALL ST. JOURNAL, Feb. 29, 2016, *at* https://www.wsj.com/articles/the-shrinking-shelf-life-of-nfl-players-1456694959, *last accessed* March 4, 2021.

their communications with Plaintiff about the upcoming season and his impending arrival in British Columbia;

d. On May 20, 2019, Hunter falsely represented that Lions intended to contract with Plaintiff for his services in his text messages regarding when Plaintiff would be brought up to British Columbia in stating that Hunter "Wont know until this weeks game reps[.]"

e. On May 28, 2019, Hunter falsely represented that Lions intended to contract with Plaintiff for his services in his text messages regarding Plaintiff's California lease arrangements in texting Plaintiff "No movement at wr yet[.]"

f. On May 29, 2019, Hunter falsely represented that Lions intended to contract with Plaintiff for his services in his text messages regarding Plaintiff being sent Lions' playbook, texting "I will let you know[.]"

g. On August 27, 2019, Hunter falsely represented that Lions intended to contract with Plaintiff for his services in his text messages regarding Plaintiff's status, texting "No. Injuries and bye week Looks like we may load DL as priority. I will let you know[.]"

h. Later on August 27, 2019, Hunter falsely represented that Lions intended to contract with Plaintiff for his services in his text messages regarding the schedule for Plaintiff to be brought to British Columbia, and in response to Plaintiff asking about a specific time for that to occur, Hunter texted back "Yes[.]"

i. On September 26, 2019, Hunter falsely represented that Lions intended to contract with Plaintiff for his services in his text messages regarding the schedule for Plaintiff to be brought to British Columbia, and in response to Plaintiff asking if it would be soon, Hunter texted back "Talkin about next 2 weeks."

41.    These intentional misrepresentations, and each of them, were of material facts, which Defendants knew the falsity of and which they communicated to Plaintiff with intent to defraud.

42. These misrepresentations, and each of them, were intended to, and did induce reasonable reliance by Plaintiff, causing Plaintiff to not seek other employment as a professional football player, and to act or fail to act in other ways that caused Plaintiff harm.

43. These misrepresentations, and each of them, were made by officers, directors, or managing agents of Lions:

a. Plaintiff is informed and believes and thereon alleges that Lions' Director of Football Operations Neil McEvoy, at all times relevant herein, was an officer, director, or managing agent of Lions;

b. Plaintiff is informed and believes and thereon alleges that Lions' Director, Player Personnel & Player Development Torey Hunter, at all times relevant herein, was an officer, director, or managing agent of Lions;

c. Plaintiff is informed and believes and thereon alleges that Lions' General Manager Ed Hervey, at all times relevant herein, was an officer, director, or managing agent of Lions.

44. As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff has sustained significant damages in an amount to be proven at trial.

45. Defendants' aforementioned acts were willful, malicious, and fraudulent in that Defendants intended to wrongfully harm Plaintiff, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendants for their acts and to deter others from engaging in similar misconduct. Defendants' conduct as described herein was engaged in by officers, directors, and/or managing agents of Lions and/or Does 1 to 20, inclusive, and/or ratified by officers, directors and/or managing agents, specifically McEvoy, Hunter, and Hervey, as described herein.

## SECOND CAUSE OF ACTION
**Promissory Fraud**

46. Plaintiff re-alleges each and every preceding paragraph of this Complaint as though fully set forth herein.

47. Defendants made a promise to Plaintiff that they intended to employ Plaintiff as a professional football player in the 2019-2020 season with Lions.

48. Defendants did not intend to perform this promise when they made it.

49. Defendants intended that Plaintiff rely on this promise.

50. Plaintiff reasonably relied on this promise, causing Plaintiff to not seek other employment as a professional football player, and to act or fail to act in other ways that caused Plaintiff harm.

51. Defendants did not employ Plaintiff as a professional football player in the 2019-2020 season with Lions.

52. These promises were made by officers, directors, or managing agents of Lions:

a. Plaintiff is informed and believes and thereon alleges that Lions' Director of Football Operations Neil McEvoy, at all times relevant herein, was an officer, director, or managing agent of Lions;

b. Plaintiff is informed and believes and thereon alleges that Lions' Director, Player Personnel & Player Development Torey Hunter, at all times relevant herein, was an officer, director, or managing agent of Lions;

c. Plaintiff is informed and believes and thereon alleges that Lions' General Manager Ed Hervey, at all times relevant herein, was an officer, director, or managing agent of Lions.

53. As a direct and proximate result of Defendants' promissory fraud, Plaintiff has sustained significant damages in an amount to be proven at trial.

54. Defendants' aforementioned acts were willful, malicious, and fraudulent in that Defendants intended to wrongfully harm Plaintiff, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendants for their acts and to deter others from engaging in similar misconduct. Defendants' conduct as described herein was engaged in by officers, directors, and/or managing agents of Lions and/or Does 1 to 20, inclusive, and/or ratified by officers, directors and/or managing agents, specifically McEvoy, Hunter, and Hervey, as described herein.

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**

55. Plaintiff re-alleges each and every preceding paragraph of this Complaint as though

fully set forth herein.

56. Defendants represented numerous times to Plaintiff that Defendants intended to employ Plaintiff as a professional football player for Lions in the 2019-2020 season.

57. Defendants had no reasonable grounds for believing that these representations were true at the time they made them to Plaintiff, and made such representations negligently.

58. Defendants profited and/or benefited from these actions.

59. Defendants' enrichment is directly and causally related to the detriment of Plaintiff.

60. These misrepresentations, and each of them, were intended to, and did induce reasonable reliance by Plaintiff, causing Plaintiff to not seek other employment as a professional football player, and to act or fail to act in other ways that caused Plaintiff harm.

61. As a direct, legal, and proximate result of the conduct of Defendants, Plaintiff was damaged in an amount to be proven by evidence at trial.

## FOURTH CAUSE OF ACTION
**Promissory Estoppel**

62. Plaintiff re-alleges each and every preceding paragraph of this Complaint as though fully set forth herein.

63. Defendants made a clear promise to Plaintiff that Defendants would employ Plaintiff as a professional football player for Lions in the 2019-2020 season.

64. Plaintiff reasonably relied on this promise, causing Plaintiff to not seek other employment as a professional football player, and to act or fail to act in other ways that caused Plaintiff harm.

65. Plaintiff's reasonable reliance on Defendants' promise caused substantial detriment to Plaintiff.

66. As a direct, legal, and proximate result of the conduct of Defendants, Plaintiff was damaged in an amount to be proven by evidence at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff TIMOTHY LUKAS prays judgment against Defendants THE BC LIONS FOOTBALL CLUB INC. and DOES 1-20, inclusive, and each of them, as follows:

(1) Awarding compensatory damages against Defendants in an amount to be proven at trial;

(2) Awarding punitive and/or exemplary damages against Defendants as permitted by law and in an amount to be proven at trial;

(3) Awarding prejudgment interest, as well as reasonable attorneys' fees and other costs as permitted by law;

(4) For any and all such other relief as the Court deems just and proper.

Respectfully submitted,

DATED: March 17, 2021

KIRSCHNER LAW, PC

ETHAN D. KIRSCHNER
*Attorney for Plaintiff*
TIMOTHY LUKAS

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: March 17, 2021

KIRSCHNER LAW, PC

ETHAN D. KIRSCHNER
*Attorney for Plaintiff*
TIMOTHY LUKAS

**VERIFICATION**

I, Timothy Lukas, am the Plaintiff in this proceeding. I have read the foregoing Verified Complaint and know its contents. The facts stated therein are true and within my personal knowledge, except as those matters which are stated on my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DATED: March 17, 2021

Timothy Lukas

Timothy Lukas

# EXHIBIT A

From: **Neil McEvoy** <NMcEvoy@bclions.com>
Date: Tue, Mar 26, 2019 at 3:27 PM
Subject: 2019 BC Lions Football Club = Contract
To: timlukas85@gmail.com <timlukas85@gmail.com>
Cc: Torey Hunter <thunter@bclions.com>

To: Mr. Tim Lukas

Re: BC Lions Football Club = Contract

Congratulations on signing with the BC Lions.

Attached to this email is a PDF copy of the contract. Please print, read over and sign where indicated by your name. Please be sure the contract is accurate and what was agreed upon.

Once you have read over and signed the contracts please send them back to me via scanner, email or text picture. Your phone should have the ability to complete one of those options.

a) BC Lions scan = nmcevoy@bclions.com

b) BC Lions cell for text picture = 778-558-0762

I will have the originals sent directly to the you (via courier) for signatures.

**Training Camp**

As a first year CFL player training camp flights will be booked for **Tuesday May 14, 2019**. The first practice will be on **Wednesday May 15, 2019** in Kamloops.

**Passports**

If you do not have one, or already done so, you need apply and retain an official passport to enter Canada and return to the USA. As per United States and Canadian Immigration regulations, all people passing through the USA/Canadian Customs are required to provide an updated passport for entry into either country.

**Reminders**

1. Once your ticket is booked, you will be responsible for the costs of any changes to the ticket.
2. If you have decided to drive, the club will reimburse you the cost of a 1 way flight ticket from your starting destination.
3. **Please note**: If your flight starts in the United States you will be required to speak with an immigration officer upon entry into Canada. Please let me know now if you have a criminal background which hiders you from travel into Canada.

**What to bring to training camp**

1. **Pack 1 bag for two weeks**. There is laundry service at the dorms at TRU (Thompson Rivers University)
2. **Shoes/Cleats**. We will practice on Field Turf. You need to bring your own cleats

3. **Gloves**. If you wear football gloves, please bring them. There will not be any gloves provided.

**Schedule of events (Changes will occur as we get closer)**

- **Tuesday May 14, 2019 = Fly in day =** Fly into Vancouver for Physical, bus to Kamloops PM
- **Wednesday May 15, 2019** – Mini-camp = practice #1
- **Thursday May 16, 2019** - Mini-camp = practice #2
- **Friday May 17, 2019** - Mini-camp = practice #3
- **Saturday May 18, 2019** – Veteran players report to training camp
- **Sunday May 26, 2019** - Pre Season game #1 in Edmonton
- **Saturday June 1, 2019** – Fan Fest 5pm – 10pm at Hillside Stadium
- **Thursday June 6, 2019** – players depart camp
- **Friday June 7, 2019 –** Pre Season game #2 vs Calgary

Congratulations again. Should you have any concerns or questions please feel free to contact me at the numbers below.

Neil McEvoy

Director, Football Operations

BC LIONS FOOTBALL CLUB

E: nmcevoy@bclions.com I t: 604 930 5480 I c: 778 558 0762 I f: 604 583 6241

10605 City Parkway I Surrey BC, V3T 4C8 I Canada

**2 attachments**

**image001.png**
13K

**SKM_C335119032613180.pdf**
626K

# EXHIBIT B



**BC Lions Football Club Inc.**

*Football Operations*
*10605 City Parkway*
*Surrey, British Columbia*
*Canada V3T 4C8*

*Tel. 604-930-5466*
*Fax. 604-583-7882*
*www.bclions.com*

Dear Mr. Tim Lukas,

Congratulations on becoming a part of the BC Lions Football team. I have enclosed your player contract as well as a return envelope for you to send your contract back. Please make sure you sign all appropriate pages and return your contract to the club by dropping the envelope off at your nearest FedEx Depot.

If you have any questions, please let me know

Thanks,

Darby Tracey
***Administration/Reception***
(e) dtracey@bclions.com
(w) 604-930-5466



**BC Lions Football Club Inc.**

Business & Football Operations
10605 City Parkway
Surrey, British Columbia
Canada, V3T 4C8

**P:** 604. 930. 5466
**F:** 604. 583. 7882
www.bclions.com
@bclions

March 26, 2019

Mr. Tim Lukas
122 Bonnie Brae
Mount Prospect, IL, 60056
Phone = 847-345-6968

Dear Tim,

On behalf of the B.C. Lions, I am pleased to enclose your standard player contract. Also included are questionnaires, letter and agreement of terms letter which all need to be filled out and signed.

Simply follow the below instructions for signing and the instructions from Darby Tracey on how to get the contract back to us.

a) Sign the SPC and addendums where marked by an "**X**".
b) Read over the agreement of terms letter and sign the bottom.
c) Please fill out the questionnaire included.
d) **RETURN ALL COPIES** of **EVERYTHING** you have signed.

**Passports**
If you do not have one, or already done so, you need apply and retain an official passport to enter Canada and return to the USA. As per United States and Canadian Immigration regulations, all people passing through the USA/Canadian Customs are required to provide an updated passport for entry into either country.

We will be flying all first year players into Vancouver Tuesday May 14, 2019.

Should you have any concerns or questions please feel free to contact me at any of the numbers below.

Sincerely,

X [signature]

Neil McEvoy
***Director, Football Operations***
(e) nmcevoy@bclions.com
(w) 604-930-5480 / 604-930-5466 / (c) 778-558-0762

CFL

**BC Lions Football Club Inc.**

*Football Operations*
*10605 City Parkway*
*Surrey, British Columbia*
*Canada V3T 4C8*

*Tel. 604-930-5466*
*Fax. 604-583-7882*
*www.bclions.com*

**Please keep this signing confidential.**

This will enable us to strategically select a date to make the announcement to give the club and you significant media exposure. Leaking this to the public via any social media source will ultimately make that impossible and will decrease the impact of the announcement when it is officially made by the club.

Once our director of communications, **Jamie Cartmell** and the communications department determine when we will announce that you have signed with the club, he will be in contact with you to go over the details of the procedure.

Congratulations once again on signing with the BC Lions and thanks in advance for your understanding in this matter.

Sincerely
BC Lions Football Club Inc.

X [signature]
Neil McEvoy
***Director, Football Operations, Player Personnel***
(e) nmcevoy@bclions.com
(w) 604-930-5480 / 604-930-5466 / (c) 778-558-0762

**BC Lions Football Club Inc.**

*Football Operations*
*10605 City Parkway*
*Surrey, British Columbia*
*Canada V3T 4C8*

*Tel. 604-930-5466*
*Fax. 604-583-7882*
*www.bclions.com*

March 26, 2019

RE: Contract Offer

To whom it may concern:

I and/or my agent on my behalf hereby certify that while in negotiations with the **BC Lions Football Club** I was offered a one-year contract as well as a multiple year contract.

After reviewing both offers I accepted the multiple year contract.

Regards,

I have read, understand and agree to the above:

| X | X | X |
|---|---|---|
| Date | Signature | Name (Please print) |

**BC Lions Football Club Inc.**

*Football Operations*
*10605 City Parkway*
*Surrey, British Columbia*
*Canada V3T 4C8*

*Tel. 604-930-5466*
*Fax. 604-583-7882*
*www.bclions.com*

**Option year agreement**

**Mr. Tim Lukas**
(hereinafter referred to as the "Player")

and

**B.C. Lions Football Club Inc.**
(hereinafter referred to as the "Club")

Further to recent discussions between yourself and the **BC Lions Football Club Inc.**, it is agreed as follows:

a) The player agrees and acknowledges that he has signed an official contract with BC Lions Football Club under the terms as described below.

I. **2019** 55,000.00.
II. **2020** 57,000.00
III. **2021** Option year = 100%.
IV. Contract expires = February 15, 2022.

b) The Club will make an attempt to re-negotiate the last contract year for the Player. Should the Player and Club not come to terms; the expiry date of the current contract will remain as described above.

Please sign this correspondence below to indicate your full understanding and concurrence with the above terms and conditions.

**BC Lions Football Club Inc.**

I have read and understood this agreement and all of its terms.

X______________________________
**Player– BC Lions Football Club**

X______________________________
Date

CFL

# CANADIAN FOOTBALL LEAGUE

BC - AA - 00541

## STANDARD PLAYER CONTRACT BETWEEN:

The BC Lions Football Club Inc. a member of the Canadian Football League (hereinafter called the "Club")

and

Mr. Tim Lukas of the City/Town of Mount Prospect

in the Province/State of Illinois, United States of America (hereinafter called the "Player")

In consideration of the mutual and respective covenants and agreements hereinafter contained, the parties hereto hereby agree as follows:

1. The term of this Contract shall be from the date of execution hereof until 12:00 o'clock noon (Eastern Standard Time) on the 2nd Tuesday in February following the close of the football season commencing in → **2019** subject however to the right of prior termination as specified herein.

2. The Player agrees that during the term of this Contract he will play football and will engage in activities related to football only for the Club and will play for the Club in two Pre-Season games, eighteen (18) regular season games and Canadian Football League playoff games and any other game approved by the Canadian Football League Players' Association; and the Club, subject to the provisions hereof, agrees during such period to employ the Player as a skilled football Player. The Player agrees during the term of this Contract to report promptly for the Club's training sessions and at the Club's directions to participate in all practice sessions.

3. For the Player's services as a skilled football Player during the term of this Contract, and for his agreement not to play football, or engage in activities related to football, for any other person, firm, Club or corporation during the term of this Contract and for the option hereinafter set forth giving the Club the right to renew this Contract and for the other undertakings of the Player herein, the Club promises to pay the Player the sum of → **$55,000.00 CDN** Dollars to be payable as follows:
100% percent of said sum to be divided into eighteen (18) equal installments and paid to the Player within forty-eight (48) hours of each regular season game whenever the Club schedule permits it to be practicable. It is understood between the parties hereto that payment to the Player by the Club for League Playoff Games will be made as hereinafter provided.

4. The Club shall be entitled to deduct from each and every payment made under any of the provisions of this Agreement, any amount required for the Player's income taxes and any other deductions required or authorized by law.

4A. The Player shall participate in the Canadian Football League Player's Pension Plan and the Club shall deduct and remit to the Pension Plan Trust Fund such sums of money as may be required for the Player's contribution to the plan; and the Club shall pay to the Pension Plan Trust Fund such sums of money as may be required for the Club's contribution to the plan for the Player.

4B. The Club is hereby authorized and shall deduct the sum of $70.00 for each regular season, playoff and Grey Cup Game and each playoff bye from compensation payable hereunder commencing with the first regular season game, playoff game, Grey Cup Game or playoff bye that the Player is on the Club Roster, Reserve List, or Disabled List and all monies so deducted shall be paid weekly by the Club to the Canadian Football League Players' Association. The amount of deduction for each regular season, playoff and Grey Cup Game and each playoff bye may be amended by the C.F.L.P.A. providing written notice to the Club on or before May 31st during each year and the Club is hereby authorized and shall deduct the amount as amended and pay the same weekly to the Canadian Football League Players' Association. The Player hereby authorizes the Club and The Canadian Football League to allow access to The Canadian Football League Players' Association to all information provided for in Article 26 of the Collective Agreement.

4C The Player authorizes and hereby consents to the Canadian Football League Players' Association using the Player's photograph, name, likeness, and autograph for commercial purposes. The Player further agrees that this authorization and consent shall continue following the termination of this Contract.

5. The Club agrees to pay the proper and necessary travelling and reasonable board and lodging expenses whenever the Player is travelling in the services of the Club for games in other than the Club's home city, but when not so travelling, the Player shall pay his own expenses.

6. Prior to the start of each football season, the Player shall attend before the Club's Medical Committee for a complete physical and medical examination and shall answer completely and truthfully all questions asked of him with respect to his physical and medical condition and if, in the opinion of the said Medical Committee, the Player is not completely fit to participate in football activities, the Club shall either accept the Player or forthwith place the Player on waivers without recall. In the event that the Club does not accept the Player, the Club shall serve written notice upon the Player prior to the first Club practice for which the Player is available. In the event that the Club does not serve written notice, the Player shall be deemed to have been accepted by the Club. In the event that the Player disagrees with the findings of the said Medical Committee, the Player may proceed to arbitration of the dispute in accordance with the arbitration procedure contained in Paragraph 21 of this Contract. If the Player is accepted and provided the Player has answered completely and truthfully all questions asked of him and has made full disclosure concerning any and all illnesses and injuries, then in the event of a subsequent injury and claim under Paragraph 20 and/or 21 made by the Player, the Club shall be estopped from raising by way of defence any prior existing condition or injury.

6A. If at any time during the term of this Contract, the Player is found by the Club's Medical Committee not completely fit to participate in football activities as a result of an injury or an illness which is unrelated to an activity performed by the Player in accordance with the terms of this Contract or any previous Contracts between the Player and the Club or any other Member Club in the Canadian Football League, the Club shall either forthwith place the Player on waivers without recall or place the Player on the C.F.L. Disabled List in accordance with the terms of the Collective Agreement. In the event that the Player disagrees with the findings of the said Medical Committee, the Player may proceed to arbitration of the dispute in accordance with the arbitration procedure contained in Paragraph 21 of this Contract.

7. The Player agrees to be bound by and to comply with the rules and regulations as defined in Article 14 of the Collective Agreement; provided however, should any term or condition in the rules and regulations conflict with any term or condition contained in the Collective Agreement, the term and condition contained in the Collective Agreement shall govern.

8. The Player agrees that should he at any time or times, or in any manner, fail to comply with the covenants or agreements on his part herein contained, the Club shall have the right for so long as he continues to fail to so comply, to suspend or discipline him. Further, should the Player at any time conduct himself in such manner, whether on or off the field so as to endanger or prejudice the interests of the Club, or fails to use his best effort to attain and maintain first class physical condition, excepting injuries or illnesses, then the Club shall have the right to discipline the Player by the imposition of a fine. In the case of a fine being imposed, the Club is authorized to deduct the amount of such a fine from any salary due or to become due to the Player under the provisions of the Contract. In the event that the Player disputes the exercise of the right granted in the within paragraph, the Player may submit such dispute to arbitration in accordance with the arbitration system contained in the Collective Agreement.

9. The Player agrees to promptly pay any fine levied on him by the Canadian Football League's Commissioner, and failing such prompt payment the Club is authorized to pay same and deduct such amount from any salary due or to become due to the Player.

10. The Club shall have the right to terminate this Contract upon notice to the Player if, in the opinion of the head coach and/or general manager: (a) the Player fails at any time during the term of this Contract to demonstrate sufficient skill and capacity to play football of the calibre required by the Club; (b) the Player's work or conduct in the performance of this Contract is unsatisfactory; (c) where there exists a limit to the number permitted of a certain class of Player and the Player, being within that class, should not be included amongst the permitted number; or (d) termination of this Contract is in the best interest of the Club having regard for the competitiveness of the Club as a whole or the formation of a team with the greatest overall strength. It is agreed by both parties that the Club's head coach and/or general manager, as the case may be, shall be the sole judge(s) as to the competency and satisfaction of the Player and his services and, in particular, as to the criteria set out in sub-paragraphs (a) to (d) of this paragraph.

11. Upon termination of this Contract during the football season, the Player shall only be entitled to receive and the Club shall only be required to pay to the Player as compensation for services theretofore rendered hereunder, such portion of the total compensation for the regular season as provided in Paragraph 3 hereof, as the number of the regular season games already played bears to the total number of games scheduled for the Club for that season, and upon such termination the Club shall pay to the Player the balance of such compensation as then remains owing to the Player. Termination of this Contract shall not be effective unless it is terminated in accordance with the terms and conditions contained in the Collective Agreement.

12. The Player promises and agrees that during the term of this Contract he will not play football for any other person, firm, Club or corporation. The Player promises and agrees that during the term of this Contract he will not engage in activities related to football without the prior written consent of the Club, which consent shall not be unreasonably withheld.

13. The Player hereby represents that he has special, exceptional and unique knowledge, skill and ability as a football Player, the loss of which cannot be estimated with any certainty and cannot be fairly or adequately compensated by damages, and therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunction proceedings against playing football or engaging in activities relating to football in Canada or the United States of America, for any person, firm, Club or corporation, and against any other breach of this Contract.

14. It is mutually agreed that the Club shall have the right to sell, exchange, assign and transfer this Contract and the Player's services to any Club of the Canadian Football League provided that all monies payable by the Club to the Player pursuant to the terms of this Contract shall be paid by the Club to whom said Contract is assigned, and the Player agrees to accept such assignment and upon receipt of notification and direction, to report promptly to the assignee Club and faithfully to perform and carry out this Contract with the assignee Club as if it had been entered into by the Player with the assignee Club instead of with this Club, and the Player agrees that the assignee Club shall pay to the Club any amount owing by the Player at the time of such sale, exchange, assignment or transfer and shall be permitted to deduct such amount from salary due or to become due to the Player.

15. On or before the date and time of expiration of this Contract, the Club may upon notice in writing to the Player addressed to his permanent home address as indicated herein, renew this Contract for a further term until 12:00 o'clock noon Eastern Standard Time the 2nd Tuesday in February following the said expiration, on the same terms as are provided in this Contract except that (1) the Club may fix the rate of compensation to be paid by the Club to the Player during the said period of renewal and the rate of compensation shall not be less than one hundred (100%) percent of the amount set forth in Paragraph 3 hereof and one hundred (100%) percent of any bonus payment or payments payable except signing bonus, and (2) after such renewal this Contract shall not include a further option to renew the Contract. The renewal of this Contract shall be understood to include all bonus clauses regardless as to the year described therein and bonus payment or payments of any nature whatsoever except that signing bonuses will not be included.

16. It is mutually understood and agreed that if the operation of the Canadian Football League is suspended, this Contract shall immediately be terminated and the remuneration to be paid to the Player shall be on the basis as provided by Paragraph 11 herein.

17. The Player acknowledges the right and power of the Club, its officers and directors and/or the Canadian Football League's Commissioner to fine and/or suspend for the term of this Contract and/or terminate the Contract of any Player who accepts a bribe or who agrees to throw or fix a game, or bets on a game; and provided the Club, its officers and directors and/or the Canadian Football League's Commissioner have acted judiciously and reasonably, the Player hereby releases the said Canadian Football League's Commissioner and the Club and every officer, director and member of the Canadian Football League and the said Club, jointly and severally of and from any and all claims whatsoever he may have arising out of or in connection with the decision of the Canadian Football League's Commissioner or the Club, its officers and directors in any of the aforesaid cases. In the event the Player disputes the exercise of the right granted in the within paragraph, the Player may submit such dispute to arbitration in accordance with the Arbitration system contained in the Collective Agreement.

18. The Player agrees that during the playing season he will not permit his picture to be taken in Club uniform or assist in the coaching of any football team other than the Club without the written consent of the Club, which consent shall not be unreasonably withheld.

19. The Player agrees that his picture may be taken from time to time for still photographs, motion pictures, television or game action photographs in Club uniform at such times as the Club may designate and the Club shall be free to use in any media such pictures and the Player's name and biographical data for Club and League publicity purposes without the Player receiving remuneration therefor.

The parties agree that the Club shall have the right to permit any person, firm or corporation to display for commercial purposes pictures of the Player in Club uniform with the consent of the Player and the Player shall not allow either gratuitously or for remuneration any pictures of the Player in Club uniform to be used for any publicity or commercial purposes without the consent in writing of the Club first had and obtained. The parties further agree that no such pictures may be used for commercial purposes without the written authorization of the Player and the Player shall be entitled to negotiate remuneration payable to himself for the granting of such written authorization to be paid by any such person, firm or corporation and that further use of such pictures involving four or more Players of one or more Clubs in one commercial use shall be subject to the approval of both the Canadian Football League and the Canadian Football League Players' Association as the agent of such Players.

20. If the Player is injured (injury shall include the aggravation of a pre-existing condition) in the performance of his duties called for hereunder and without restricting the generality of the foregoing, those duties shall include attendance at any practice session called by the Club or any coach thereof and attendance at and performance in any Pre-Season game, regular season game, playoff game and Grey Cup Game, the Club shall pay the Player's hospitalization and medical expenses necessarily incurred or arising from the injury provided that the hospital and doctors are selected by the Club, or if selected by the Player, are approved in writing by the Club which approval shall not be unreasonably withheld; the Club's obligation to pay such expenses shall continue until such time as the Club's doctor, or the doctor selected by the Player and approved by the Club, certifies in writing that the Player has sufficiently recovered from the injury to play football, or until one year from the date that the injury occurred, whichever event shall first occur; thereafter the Player relieves the Club from any and every additional obligation, liability, claim or demand whatsoever in connection with the injury, provided in no event is the Club, its servants or agents relieved from any negligence on the part of its servants or agents in the treatment of said injury, nor does the Player release the Club of any of its obligations arising under Paragraph 21 hereof.

21. It is further agreed that if the Player is a veteran and is injured (injury shall include the aggravation of a pre-existing condition) in the performance of his duties called for hereunder and without restricting the generality of the foregoing, those duties shall include attendance at any practice session called by the Club or any coach thereof and attendance at and performance in any Pre-Season game, regular season game, play off game and Grey Cup Game; and the injury or injuries are such as to render him unfit to play skilled football during the current football season or any part thereof, the Club shall pay to the Player so long as the Player continues to be unfit to play skilled football, One Hundred (100%) percent of the salary and all other benefits to which the Player would be entitled pursuant to the provisions of this Contract and the Collective Agreement including payment for all Pre-Season games, regular season games, playoff games, byes, Grey Cup Game, in which the Club participates, it being understood and agreed that this obligation shall not extend beyond the day before the first day of the training camp period in the season following the current playing season. The Club shall be prohibited from terminating this Contract with the Player so long as the Player remains unfit to play skilled football until the day before the first day of the training camp period in the season following the current playing season. If the Club purports to terminate this Contract with the Player and if the Player maintains he is unfit to play skilled football, the Player may notify the Club in writing within ten (10) days from the date it became known or should have become known to the Player that the Contract had been purported to be terminated, and may within twenty (20) days from the date when it became known or should have become known to the Player that the Club has purported to terminate the Contract, submit to an examination by a neutral physician as agreed upon in accordance with the Collective Agreement. The Player hereby authorizes the Club to, and the Club shall, provide the neutral physician with copies to the Canadian Football League Players Association and the Canadian Football League Players Relations Committee, the medical history reports relating to the injury or injuries; and such medical history reports may contain all actions taken by the Club doctor, and the Club doctor's opinion as to whether the Player is or is not fit to play skilled football. The opinion of the neutral physician who examines the Player as to whether the Player is fit or unfit to play skilled football shall be conclusive and binding upon the Player and the Club. The expense of obtaining the opinion of such neutral physician shall be borne by the Club if his opinion agrees with that of the Player and by the Player if such opinion agrees with the position of the Club. If the Player is not a veteran, this clause shall not be applicable to any injury sustained prior to the playing of the first regular season game of the season but shall be applicable thereafter mutatis mutandis.

22. The Player represents to the Club that he is not under Contract or option to play football for any other Club in Canada or the United States of America during the term of this Contract, and that he has no contractual obligations which would prevent him from entering into the within Contract.

23. Should the Player become a member of the Armed Forces of either Canada or the United States of America, and be unable to perform the services as agreed herein, or should the Player retire from football, prior to the expiration of the term of this Contract, in either case, the Player shall be ineligible to play football for any other person, firm, club or corporation until the expiration date of this Contract or the termination of this Contract by the Club, whichever first occurs.

24. This agreement contains the entire Agreement between the parties and there are no oral or written inducements, promises or agreements except as contained herein.

25. If the Player is on the Club's Roster as registered with the Commissioner during the time the Club participates in a playoff game of the League, the Club shall pay to the Player bonus monies as described in the Collective Agreement.

26. This Agreement has been made under the laws of the Province/State of → **British Columbia** and shall be governed by the laws of the said Province/State, but that in the event that the Agreement is assigned to a Club in a Province/State other than → any matter arising after the Agreement is assigned shall be governed by the laws of the Province/State in which the Assignee Club is located.

27. The Club agrees to pay to the Player the cost of economy air transportation from the Player's normal off-season residence to the City where the Club is situate for the purposes of the Player attending at training camp. In the event that the Player's Contract is terminated at any time prior to the end of the last regular season game, playoff game, or Grey Cup Game played by the Club, and in the event that the Player is not paid for all regular season games, playoff games and Grey Cup Game played by the Club, the Club shall pay to the Player the cost of economy air transportation from the City where the Club is situate to the place of the Player's normal off-season residence.

28. The Club and the Player agree that in the interpretation of this Contract, time shall be of the essence.

29. In this Contract the words "Collective Agreement" shall mean the Agreement between the Canadian Football League Player Relations Committee, representing the Member Clubs of The Canadian Football League and The Canadian Football League and the Canadian Football League Players' Association. The Club and the Player agree to be bound by the terms and conditions contained in the Collective Agreement.

30. **The Club and the Player agree that unless otherwise stated, all monies referred to herein shall be deemed to be in Canadian currency.**

**31. The attached addendum forming part of this contract consists only and entirely of one page inclusively containing paragraphs #32 to #35.**

IN WITNESS WHEREOF the Player has hereunto set his hand and seal and the Club has caused this Contract to be executed by its duly authorized officer or officers this ________ day of March, A.D. 2019.

SIGNED, SEALED AND DELIVERED in the presence of:

PLAYER X ______________________
Mr. Tim Lukas

Address: 122 Bonnie Brae, Mount Prospect, IL, 60056.
Email- TimLukas85@gmail.com

Telephone Number: 847.345.6968
Player's permanent home address and telephone number.

Witness ______________________

Club The BC Lions Football Club Inc.

Per ______________________

Contract advisor/agent representing the player with respect to the negotiation of this Contract

______________________
Registration Number of Contract Advisor/Agent

______________________
Name of Contract Advisor/Agent

**ADDENDUM TO**
**CANADIAN FOOTBALL LEAGUE CONTRACT (BC-AA-00541)**
BETWEEN

**TIM LUKAS**
(hereinafter referred to as The "Player")

And

**B.C. LIONS FOOTBALL CLUB INC.**
(hereinafter referred to as The "Club")

executed the ____________ day of **March**, A.D. **2019.**

IN CONSIDERATION of the mutual and respective covenants and agreements hereinafter contained, the parties hereto agree as follows:

The following Paragraphs shall be added for the 2019 regular season:

32. The Club agrees to pay the subject Player a bonus of 1/18 of $3,600.00 for each game of the regular season in which said Player starts and plays in 51% of all offensive plays per game (excluding Special Teams). Payment(s) due to the Player under this paragraph will be paid on December 1 of the year in which the bonus us earned. Maximum amount payable is $3,600.00.

33. The Club agrees that if at the close of the regular season and, if according to the official statistics of the Canadian Football League, said player is the sole CFL leader in the following categories, said Player will receive the additional amounts listed below:
    a. Receptions $1,000.00
    b. Receiving yards $1,000.00

34. The Club agrees to pay the subject Player a bonus of $1,000.00 subject to said Player being selected to the division all-star team, as selected by the Football Reporters of Canada. Maximum amount payable is $1,000.00.

35. The Club agrees to pay the subject Player a bonus of $1,000.00 subject to said Player being selected to the CFL all-star team, as selected by the Football Reporters of Canada. Maximum amount payable is $1,000.00.

IN WITNESS WHEREOF the Player has hereunto set his hand and seal and The Club has executed this agreement by the signatures of its proper officers in that behalf.

Signed, sealed and delivered in the presence of:

Witness X ______________________________

Player X ______________________________
**Tim Lukas**

Club: B.C. Lions Football Club Inc. ______________

Per X ______________________________

CFL

# CANADIAN FOOTBALL LEAGUE

BC - AA - 00542

STANDARD PLAYER CONTRACT BETWEEN:

The BC Lions Football Club Inc. a member of the Canadian Football League (hereinafter called the "Club")

and

Mr. Tim Lukas of the City/Town of Mount Prospect

in the Province/State of Illinois, United States of America (hereinafter called the "Player")

In consideration of the mutual and respective covenants and agreements hereinafter contained, the parties hereto hereby agree as follows:

1. The term of this Contract shall be from the date of execution hereof until 12:00 o'clock noon (Eastern Standard Time) on the 2nd Tuesday in February following the close of the football season commencing in → **2020** subject however to the right of prior termination as specified herein.

2. The Player agrees that during the term of this Contract he will play football and will engage in activities related to football only for the Club and will play for the Club in two Pre-Season games, eighteen (18) regular season games and Canadian Football League playoff games and any other game approved by the Canadian Football League Players' Association; and the Club, subject to the provisions hereof, agrees during such period to employ the Player as a skilled football Player. The Player agrees during the term of this Contract to report promptly for the Club's training sessions and at the Club's directions to participate in all practice sessions.

3. For the Player's services as a skilled football Player during the term of this Contract, and for his agreement not to play football, or engage in activities related to football, for any other person, firm, Club or corporation during the term of this Contract and for the option hereinafter set forth giving the Club the right to renew this Contract and for the other undertakings of the Player herein, the Club **promises to pay the Player the sum of Dollars to be payable as follows:** → **$57,000.00 CDN**
100% percent of said sum to be divided into eighteen (18) equal installments and paid to the Player within forty-eight (48) hours of each regular season game whenever the Club schedule permits it to be practicable. It is understood between the parties hereto that payment to the Player by the Club for League Playoff Games will be made as hereinafter provided.

4. The Club shall be entitled to deduct from each and every payment made under any of the provisions of this Agreement, any amount required for the Player's income taxes and any other deductions required or authorized by law.

4A. The Player shall participate in the Canadian Football League Player's Pension Plan and the Club shall deduct and remit to the Pension Plan Trust Fund such sums of money as may be required for the Player's contribution to the plan; and the Club shall pay to the Pension Plan Trust Fund such sums of money as may be required for the Club's contribution to the plan for the Player.

4B. The Club is hereby authorized and shall deduct the sum of $70.00 for each regular season, playoff and Grey Cup Game and each playoff bye from compensation payable hereunder commencing with the first regular season game, playoff game, Grey Cup Game or playoff bye that the Player is on the Club Roster, Reserve List, or Disabled List and all monies so deducted shall be paid weekly by the Club to the Canadian Football League Players' Association. The amount of deduction for each regular season, playoff and Grey Cup Game and each playoff bye may be amended by the C.F.L.P.A. providing written notice to the Club on or before May 31st during each year and the Club is hereby authorized and shall deduct the amount as amended and pay the same weekly to the Canadian Football League Players' Association. The Player hereby authorizes the Club and The Canadian Football League to allow access to The Canadian Football League Players' Association to all information provided for in Article 26 of the Collective Agreement.

4C. The Player authorizes and hereby consents to the Canadian Football League Players' Association using the Player's photograph, name, likeness, and autograph for commercial purposes. The Player further agrees that this authorization and consent shall continue following the termination of this Contract.

5. The Club agrees to pay the proper and necessary travelling and reasonable board and lodging expenses whenever the Player is travelling in the services of the Club for games in other than the Club's home city, but when not so travelling, the Player shall pay his own expenses.

6. Prior to the start of each football season, the Player shall attend before the Club's Medical Committee for a complete physical and medical examination and shall answer completely and truthfully all questions asked of him with respect to his physical and medical condition and if, in the opinion of the said Medical Committee, the Player is not completely fit to participate in football activities, the Club shall either accept the Player or forthwith place the Player on waivers without recall. In the event that the Club does not accept the Player, the Club shall serve written notice upon the Player prior to the first Club practice for which the Player is available. In the event that the Club does not serve written notice, the Player shall be deemed to have been accepted by the Club. In the event that the Player disagrees with the findings of the said Medical Committee, the Player may proceed to arbitration of the dispute in accordance with the arbitration procedure contained in Paragraph 21 of this Contract. If the Player is accepted and provided the Player has answered completely and truthfully all questions asked of him and has made full disclosure concerning any and all illnesses and injuries, then in the event of a subsequent injury and claim under Paragraph 20 and/or 21 made by the Player, the Club shall be estopped from raising by way of defence any prior existing condition or injury.

6A. If at any time during the term of this Contract, the Player is found by the Club's Medical Committee not completely fit to participate in football activities as a result of an injury or an illness which is unrelated to an activity performed by the Player in accordance with the terms of this Contract or any previous Contracts between the Player and the Club or any other Member Club in the Canadian Football League, the Club shall either forthwith place the Player on waivers without recall or place the Player on the C.F.L. Disabled List in accordance with the terms of the Collective Agreement. In the event that the Player disagrees with the findings of the said Medical Committee, the Player may proceed to arbitration of the dispute in accordance with the arbitration procedure contained in Paragraph 21 of this Contract.

7. The Player agrees to be bound by and to comply with the rules and regulations as defined in Article 14 of the Collective Agreement; provided however, should any term or condition in the rules and regulations conflict with any term or condition contained in the Collective Agreement, the term and condition contained in the Collective Agreement shall govern.

8. The Player agrees that should he at any time or times, or in any manner, fail to comply with the covenants or agreements on his part herein contained, the Club shall have the right for so long as he continues to fail to so comply, to suspend or discipline him. Further, should the Player at any time conduct himself in such manner, whether on or off the field so as to endanger or prejudice the interests of the Club, or fails to use his best effort to attain and maintain first class physical condition, excepting injuries or illnesses, then the Club shall have the right to discipline the Player by the imposition of a fine. In the case of a fine being imposed, the Club is authorized to deduct the amount of such a fine from any salary due or to become due to the Player under the provisions of the Contract. In the event that the Player disputes the exercise of the right granted in the within paragraph, the Player may submit such dispute to arbitration in accordance with the arbitration system contained in the Collective Agreement.

9. The Player agrees to promptly pay any fine levied on him by the Canadian Football League's Commissioner, and failing such prompt payment the Club is authorized to pay same and deduct such amount from any salary due or to become due to the Player.

10. The Club shall have the right to terminate this Contract upon notice to the Player if, in the opinion of the head coach and/or general manager: (a) the Player fails at any time during the term of this Contract to demonstrate sufficient skill and capacity to play football of the calibre required by the Club; (b) the Player's work or conduct in the performance of this Contract is unsatisfactory; (c) where there exists a limit to the number permitted of a certain class of Player and the Player, being within that class, should not be included amongst the permitted number; or (d) termination of this Contract is in the best interest of the Club having regard for the competitiveness of the Club as a whole or the formation of a team with the greatest overall strength. It is agreed by both parties that the Club's head coach and/or general manager, as the case may be, shall be the sole judge(s) as to the competency and satisfaction of the Player and his services and, in particular, as to the criteria set out in sub-paragraphs (a) to (d) of this paragraph.

11. Upon termination of this Contract during the football season, the Player shall only be entitled to receive and the Club shall only be required to pay to the Player as compensation for services theretofore rendered hereunder, such portion of the total compensation for the regular season as provided in Paragraph 3 hereof, as the number of the regular season games already played bears to the total number of games scheduled for the Club for that season, and upon such termination the Club shall pay to the Player the balance of such compensation as then remains owing to the Player. Termination of this Contract shall not be effective unless it is terminated in accordance with the terms and conditions contained in the Collective Agreement.

12. The Player promises and agrees that during the term of this Contract he will not play football for any other person, firm, Club or corporation. The Player promises and agrees that during the term of this Contract he will not engage in activities related to football without the prior written consent of the Club, which consent shall not be unreasonably withheld.

13. The Player hereby represents that he has special, exceptional and unique knowledge, skill and ability as a football Player, the loss of which cannot be estimated with any certainty and cannot be fairly or adequately compensated by damages, and therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunction proceedings against playing football or engaging in activities relating to football in Canada or the United States of America, for any person, firm, Club or corporation, and against any other breach of this Contract.

14. It is mutually agreed that the Club shall have the right to sell, exchange, assign and transfer this Contract and the Player's services to any Club of the Canadian Football League provided that all monies payable by the Club to the Player pursuant to the terms of this Contract shall be paid by the Club to whom said Contract is assigned, and the Player agrees to accept such assignment and upon receipt of notification and direction, to report promptly to the assignee Club and faithfully to perform and carry out this Contract with the assignee Club as if it had been entered into by the Player with the assignee Club instead of with this Club, and the Player agrees that the assignee Club shall pay to the Club any amount owing by the Player at the time of such sale, exchange, assignment or transfer and shall be permitted to deduct such amount from salary due or to become due to the Player.

15. On or before the date and time of expiration of this Contract, the Club may upon notice in writing to the Player addressed to his permanent home address as indicated herein, renew this Contract for a further term until 12:00 o'clock noon Eastern Standard Time the 2nd Tuesday in February following the said expiration, on the same terms as are provided in this Contract except that (1) the Club may fix the rate of compensation to be paid by the Club to the Player during the said period of renewal and the rate of compensation shall not be less than one hundred (100%) percent of the amount set forth in Paragraph 3 hereof and one hundred (100%) percent of any bonus payment or payments payable except signing bonus, and (2) after such renewal this Contract shall not include a further option to renew the Contract. The renewal of this Contract shall be understood to include all bonus clauses regardless as to the year described therein and bonus payment or payments of any nature whatsoever except that signing bonuses will not be included.

16. It is mutually understood and agreed that if the operation of the Canadian Football League is suspended, this Contract shall immediately be terminated and the remuneration to be paid to the Player shall be on the basis as provided by Paragraph 11 herein.

17. The Player acknowledges the right and power of the Club, its officers and directors and/or the Canadian Football League's Commissioner to fine and/or suspend for the term of this Contract and/or terminate the Contract of any Player who accepts a bribe or who agrees to throw or fix a game, or bets on a game; and provided the Club, its officers and directors and/or the Canadian Football League's Commissioner have acted judiciously and reasonably, the Player hereby releases the said Canadian Football League's Commissioner and the Club and every officer, director and member of the Canadian Football League and the said Club, jointly and severally of and from any and all claims whatsoever he may have arising out of or in connection with the decision of the Canadian Football League's Commissioner or the Club, its officers and directors in any of the aforesaid cases. In the event the Player disputes the exercise of the right granted in the within paragraph, the Player may submit such dispute to arbitration in accordance with the Arbitration system contained in the Collective Agreement.

18. The Player agrees that during the playing season he will not permit his picture to be taken in Club uniform or assist in the coaching of any football team other than the Club without the written consent of the Club, which consent shall not be unreasonably withheld.

19. The Player agrees that his picture may be taken from time to time for still photographs, motion pictures, television or game action photographs in Club uniform at such times as the Club may designate and the Club shall be free to use in any media such pictures and the Player's name and biographical data for Club and League publicity purposes without the Player receiving remuneration therefor.

The parties agree that the Club shall have the right to permit any person, firm or corporation to display for commercial purposes pictures of the Player in Club uniform with the consent of the Player and the Player shall not allow either gratuitously or for remuneration any pictures of the Player in Club uniform to be used for any publicity or commercial purposes without the consent in writing of the Club first had and obtained. The parties further agree that no such pictures may be used for commercial purposes without the written authorization of the Player and the Player shall be entitled to negotiate remuneration payable to himself for the granting of such written authorization to be paid by any such person, firm or corporation and that further use of such pictures involving four or more Players of one or more Clubs in one commercial use shall be subject to the approval of both the Canadian Football League and the Canadian Football League Players' Association as the agent of such Players.

20. If the Player is injured (injury shall include the aggravation of a pre-existing condition) in the performance of his duties called for hereunder and without restricting the generality of the foregoing, those duties shall include attendance at any practice session called by the Club or any coach thereof and attendance at and performance in any Pre-Season game, regular season game, playoff game and Grey Cup Game, the Club shall pay the Player's hospitalization and medical expenses necessarily incurred or arising from the injury provided that the hospital and doctors are selected by the Club, or if selected by the Player, are approved in writing by the Club which approval shall not be unreasonably withheld; the Club's obligation to pay such expenses shall continue until such time as the Club's doctor, or the doctor selected by the Player and approved by the Club, certifies in writing that the Player has sufficiently recovered from the injury to play football, or until one year from the date that the injury occurred, whichever event shall first occur; thereafter the Player relieves the Club from any and every additional obligation, liability, claim or demand whatsoever in connection with the injury, provided in no event is the Club, its servants or agents relieved from any negligence on the part of its servants or agents in the treatment of said injury, nor does the Player release the Club of any of its obligations arising under Paragraph 21 hereof.

21. It is further agreed that if the Player is a veteran and is injured (injury shall include the aggravation of a pre-existing condition) in the performance of his duties called for hereunder and without restricting the generality of the foregoing, those duties shall include attendance at any practice session called by the Club or any coach thereof and attendance at and performance in any Pre-Season game, regular season game, play off game and Grey Cup Game; and the injury or injuries are such as to render him unfit to play skilled football during the current football season or any part thereof, the Club shall pay to the Player so long as the Player continues to be unfit to play skilled football, One Hundred (100%) percent of the salary and all other benefits to which the Player would be entitled pursuant to the provisions of this Contract and the Collective Agreement including payment for all Pre-Season games, regular season games, playoff games, byes, Grey Cup Game, in which the Club participates, it being understood and agreed that this obligation shall not extend beyond the day before the first day of the training camp period in the season following the current playing season. The Club shall be prohibited from terminating this Contract with the Player so long as the Player remains unfit to play skilled football until the day before the first day of the training camp period in the season following the current playing season. If the Club purports to terminate this Contract with the Player and if the Player maintains he is unfit to play skilled football, the Player may notify the Club in writing within ten (10) days from the date it became known or should have become known to the Player that the Contract had been purported to be terminated, and may within twenty (20) days from the date when it became known or should have become known to the Player that the Club has purported to terminate the Contract, submit to an examination by a neutral physician as agreed upon in accordance with the Collective Agreement. The Player hereby authorizes the Club to, and the Club shall, provide the neutral physician with copies to the Canadian Football League Players Association and the Canadian Football League Players Relations Committee, the medical history reports relating to the injury or injuries; and such medical history reports may contain all actions taken by the Club doctor, and the Club doctor's opinion as to whether the Player is or is not fit to play skilled football. The opinion of the neutral physician who examines the Player as to whether the Player is fit or unfit to play skilled football shall be conclusive and binding upon the Player and the Club. The expense of obtaining the opinion of such neutral physician shall be borne by the Club if his opinion agrees with that of the Player and by the Player if such opinion agrees with the position of the Club. If the Player is not a veteran, this clause shall not be applicable to any injury sustained prior to the playing of the first regular season game of the season but shall be applicable thereafter mutatis mutandis.

22. The Player represents to the Club that he is not under Contract or option to play football for any other Club in Canada or the United States of America during the term of this Contract, and that he has no contractual obligations which would prevent him from entering into the within Contract.

23. Should the Player become a member of the Armed Forces of either Canada or the United States of America, and be unable to perform the services as agreed herein, or should the Player retire from football, prior to the expiration of the term of this Contract, in either case, the Player shall be ineligible to play football for any other person, firm, club or corporation until the expiration date of this Contract or the termination of this Contract by the Club, whichever first occurs.

24. This agreement contains the entire Agreement between the parties and there are no oral or written inducements, promises or agreements except as contained herein.

25. If the Player is on the Club's Roster as registered with the Commissioner during the time the Club participates in a playoff game of the League, the Club shall pay to the Player bonus monies as described in the Collective Agreement.

26. This Agreement has been made under the laws of the Province/State of → **British Columbia** and shall be governed by the laws of the said Province/State, but that in the event that the Agreement is assigned to a Club in a Province/State other than → any matter arising after the Agreement is assigned shall be governed by the laws of the Province/State in which the Assignee Club is located.

27. The Club agrees to pay to the Player the cost of economy air transportation from the Player's normal off-season residence to the City where the Club is situate for the purposes of the Player attending at training camp. In the event that the Player's Contract is terminated at any time prior to the end of the last regular season game, playoff game, or Grey Cup Game played by the Club, and in the event that the Player is not paid for all regular season games, playoff games and Grey Cup Game played by the Club, the Club shall pay to the Player the cost of economy air transportation from the City where the Club is situate to the place of the Player's normal off-season residence.

28. The Club and the Player agree that in the interpretation of this Contract, time shall be of the essence.

29. In this Contract the words "Collective Agreement" shall mean the Agreement between the Canadian Football League Player Relations Committee, representing the Member Clubs of The Canadian Football League and The Canadian Football League and the Canadian Football League Players' Association. The Club and the Player agree to be bound by the terms and conditions contained in the Collective Agreement.

30. **The Club and the Player agree that unless otherwise stated, all monies referred to herein shall be deemed to be in Canadian currency.**

31. The attached addendum forming part of this contract consists only and entirely of one page inclusively containing paragraphs #32 to #35.

IN WITNESS WHEREOF the Player has hereunto set his hand and seal and the Club has caused this Contract to be executed by its duly authorized officer or officers this ________ day of March, A.D. 2019.

SIGNED, SEALED AND DELIVERED in the presence of:

Witness ____________________

PLAYER X ____________________
Mr. Tim Lukas

Club The BC Lions Football Club Inc.

Per ____________________

Address: 122 Bonnie Brae, Mount Prospect, IL, 60056.
Email- TimLukas85@gmail.com

Telephone Number: 847.345.6968
Player's permanent home address and telephone number.

Contract advisor/agent representing the player with respect to the negotiation of this Contract

Registration Number of Contract Advisor/Agent

-

Name of Contract Advisor/Agent

DISTRIBUTION: CLUB / PLAYER / CFL / CFLPA

**ADDENDUM TO**
**CANADIAN FOOTBALL LEAGUE CONTRACT (BC-AA-00542)**
BETWEEN

**TIM LUKAS**
(hereinafter referred to as The "Player")

And

**B.C. LIONS FOOTBALL CLUB INC.**
(hereinafter referred to as The "Club")

executed the ____________ day of **March**, A.D. **2019.**

IN CONSIDERATION of the mutual and respective covenants and agreements hereinafter contained, the parties hereto agree as follows:

The following Paragraphs shall be added for the 2020 regular season and option year 2021:

32. The Club agrees to pay the subject Player a bonus of 1/18 of $4,500.00 for each game of the regular season in which said Player starts and plays in 51% of all offensive plays per game (excluding Special Teams). Payment(s) due to the Player under this paragraph will be paid on December 1 of the year in which the bonus us earned. Maximum amount payable is $4,500.00.

33. The Club agrees that if at the close of the regular season and, if according to the official statistics of the Canadian Football League, said player is the sole CFL leader in the following categories, said Player will receive the additional amounts listed below:
    a. Receptions $1,000.00
    b. Receiving yards $1,000.00

34. The Club agrees to pay the subject Player a bonus of $1,000.00 subject to said Player being selected to the division all-star team, as selected by the Football Reporters of Canada. Maximum amount payable is $1,000.00.

35. The Club agrees to pay the subject Player a bonus of $1,000.00 subject to said Player being selected to the CFL all-star team, as selected by the Football Reporters of Canada. Maximum amount payable is $1,000.00.

IN WITNESS WHEREOF the Player has hereunto set his hand and seal and The Club has executed this agreement by the signatures of its proper officers in that behalf.

Signed, sealed and delivered in the presence of:

Witness X ______________________________

Player X ______________________________
**Tim Lukas**

Club: B.C. Lions Football Club Inc. ______________

Per X ______________________________

**BC Lions Football Club Inc.**

*Football Operations*
*10605 City Parkway*
*Surrey, British Columbia*
*Canada V3T 4C8*

*Tel. 604-930-5466*
*Fax. 604-583-7882*
*www.bclions.com*

**Negotiation of Individual Player Contracts**

Supplemental to the contractual agreement of **Tim Lukas** hereinafter referred to as The "**Player**" and the BC Lions Football Club Inc. hereinafter referred to as The "**Club**", this will confirm the following:

This letter specifies that the Player understands and acknowledges that he has signed a contract to play professional football with the **BC Lions** of the **Canadian Football League.** As per the current **CFL/CFLPA** collective bargaining agreement all member clubs shall be obligated to offer each Player or the Player's representative in the negotiation process a one (1) year C.F.L. Standard Player Contract. I and/or my agent on my behalf hereby certify that while in negotiations with the **BC Lions Football Club** I was offered a one year plus an option contract as well as a two year plus an option contract.

By signing this document, the Player herby recognizes that the BC Lions Football Club Inc. is in adherence of the collective bargaining agreement (article 8, paragraph 3) and has offered a one year C.F.L. Standard player contract in conjunction with a multiple year contract proposal.

**Registered Contract Advisor**

All Member Clubs shall be required to negotiate with each Player or any person designated by the Player in writing to represent the Player. The Member Club shall not deal with any person who is not registered as a Contract Advisor with the C.F.L.P.A. It is agreed that Member Clubs, Contract Advisors and Players shall, at all times, negotiate in good faith and act in accordance with ethical business practices

a) Player has a registered contract adviser and the BC Lions Football Club has added this contract advisor to the signed standard player contract.

or

b) By signing this document, the Player herby recognizes that the BC Lions Football Club Inc. is in adherence of the collective bargaining agreement (article 28) and has negotiated in good faith with the Player. The Player has negotiated the contract on his own behalf. The Player may have a contract adviser who he has received contract advice from, but the Club has dealt with the Player and as per the article 28 the non-registered contract advisor was not involved in the contractual process of negotiation.

**Option Year**

We draw your attention to Paragraph 15 of the CFL standard player's contract which provides for the right of the Club to exercise at its option renewal of the contract for a further one year term. Paragraph 15 provides for the compensation to be no less than compensation provided for Paragraph 3 of the contract.

The current BC Lions Football Club policy concerning the option year is for the renewal compensation rate to be 100% of the previous contract year. As per the CFL/CFLPA collective bargaining agreement, the club is required to enter into negotiations with all players entering their option year. Once the player enters his option year, the Club will start the process of negotiating a new contract.

The Player herby agrees to the terms and length of the contract that has been signed with the BC Lions Football Club. You are entering into this agreement freely and willingly and it shall be binding upon your heirs, assigns and legal representatives. You will fulfill the length of the agreement to the best of your ability as a professional football player.

Please sign this correspondence below to indicate your full understanding and concurrence with the above conditions.

X______________________________
**BC Lions Football Player**

X____________________
**Date**

Appendix "L"

Letter from Member Clubs
re:
Negotiation of Individual Player Contracts

Dear Player:

We are attaching to this letter a copy of the C.F.L. Standard Player Contract.

We draw your attention to Paragraph 15 of this Contract which provides for the right of the Club to exercise at its option renewal of this Contract for a further one-year term. Paragraph 15 provides for the compensation to be no less than the compensation provided for in Paragraph 3 of this Contract.

It is open to you at this time to negotiate the compensation payable in the option year.

We also draw to your attention to paragraph 29 of the Contract which provides for your agreement to be bound by the terms of the Collective Agreement. The Collective Agreement provides for mandatory drug testing for performance enhancing drugs in accordance with the C.F.L./C.F.L.P.A. Drug Policy.

Should you have any questions in relation to the Drug Policy please contact the C.F.L.P.A. Offices at:

> 175 Barton Street East
> Stoney Creek, Ontario, L8E 2K3
> Phone: (905) 644-0852 OR 1-800-616-6865
> Fax: (905) 664-9653

Yours truly,
Club

I have read and understand the above:

X________________________________________
Player

# BC Lions Football Club – Player Questionnaire

**Welcome to the BC Lions Football Club.**

This questionnaire is designed to ensure we have accurate information about you, your college career and your pro experience (if applicable). This information is used in our training camp guide, media guide and on our website. It's of interest to our fans and members of the media. Please take a few moments and fill it out as accurately as possible.

Thank you for your time and cooperation, please return this with your contract. If you prefer to receive this document via email contact the club's director of communications - **Jamie Cartmell** (jcartmell@bclions.com or call/text at 778.558.0761.)

## Personal information

**Full Name:**                              **Twitter handle:**                              **Instagram handle:**
**Position:**
**Nickname:**
**Date of Birth (please spell the month) and place of birth:**
**Phone number:**
**Email:**
**Where do you currently reside (please provide mailing address):**
**Occupation outside of football:**

## College - Pro Information (if applicable)

**College and years attended:**

**Your major in college:**

**Any college teammates currently in the CFL?**

**Did you participate in another sport in college:**

**Pro Experience: NFL, CFL, Arena (teams, years, games played):**

## Miscellaneous

**Age you started playing football:**

**Describe the most memorable football moment and/or the most memorable moment in your athletic career:**

**Your biggest fan:**

**Favorite movie:**

**Favorite TV show:**

**Favorite musician:**

**Favorite thing to do when not playing football:**

**Where you spend your offseason:**

**If you have anything to add to this information – please share it – it can be anything from past military service to interesting offseason hobbies like playing an instrument, volunteering, traveling – anything you provide is appreciated.**

# EXHIBIT C

From: **Neil McEvoy** <NMcEvoy@bclions.com>
Date: Fri, Mar 29, 2019 at 5:01 PM
Subject: Re: Contract
To: Timothy Lukas <timlukas85@gmail.com>


Thanks for the signed contract.
I will speak with the equipment manager to see what numbers you have asked will be available.

Neil

Sent from my iPhone

> On Mar 29, 2019, at 2:05 PM, Timothy Lukas <timlukas85@gmail.com> wrote:
>
> Mr. McVoy,
>
> I've attached my signed contract here. Please let me know if anything needs to be adjusted.
>
> If it's possible, I would like to be assigned #85 as a first choice, #11 as second choice, or #82 if available.
>
> Thank you very much for the opportunity to join the Lion family. I'm very excited and can't wait to get started. If the offensive playbook is ready, I'd love to know how I can access it to start studying.
>
> Best regards,
>
> Tim Lukas
> <20190327141231.pdf>

# EXHIBIT D

Torey Hunter (C...
+12083802212

Friday, December 21, 2018

Hey Torey. I saw the HC hire, love it - he's a grinder similar to myself. Really glad to see the staff coming together, doing a great job. It's going to be an awesome year! Happy holidays to you and your entire family sir, hope all is well.

11:41 AM

Monday, May 20, 2019

Hi Torey, can you give me an update on when I'll be coming up?

6:55 PM

Wont know until this weeks game reps

10:11 PM

Tuesday, May 28, 2019

Mr. Hunter, any updates? My lease in California is up soon so I need to know about arrangements.

Are you free to get on the phone to talk about my status and what the plan is?

8:33 PM

No movement at wr yet

9:37 PM

Torey Hunter (C...
+12083802212

Tuesday, May 28, 2019

Mr. Hunter, any updates? My lease in California is up soon so I need to know about arrangements.

Are you free to get on the phone to talk about my status and what the plan is?

8:33 PM

No movement at wr yet

9:37 PM

Wednesday, May 29, 2019

OK, please keep me updated. I'm chomping at the bit, ready to go. May I have the playbook (or formations) sent over so I can get on top of it?

12:38 PM

I will let you know

1:02 PM

Thanks Torey. I'm in the best shape of my life and will contribute on / off the field immediately upon my arrival sir. I'm a game changer Torey. I'm going to make y'all very happy about bringing me in.

2:59 PM

Thursday, July 18, 2019

# EXHIBIT E

From: **Timothy Lukas** <timlukas85@gmail.com>
Date: Fri, May 31, 2019 at 5:44 PM
Subject: Re: Contract
To: Neil McEvoy <NMcEvoy@bclions.com>

Hi Mr. McEvoy,

I hope all is well. I submitted my signed contract shortly after receiving it in March, but am currently confused about my status with the Lions.

I spoke briefly with Ed and Torey in Los Angeles in April and with Torey lately through texts. Ed said that I would be coming in for camp and Torey mentioned that a new contract has to be made for me due to the new CBA, but there has not been any further clear communication from the team. I haven't received the playbook or heard anything about arrangements for me to come to BC.

I have been training very hard to prepare for the season and was looking forward to joining the team in training camp. I've passed on other opportunities and have dedicated my all to be ready. I would greatly appreciate some clarification.

Best regards,

Tim Lukas

On Fri, Mar 29, 2019, 3:01 PM Neil McEvoy <NMcEvoy@bclions.com> wrote:

Thanks for the signed contract.
I will speak with the equipment manager to see what numbers you have asked will be available.

Neil

Sent from my iPhone

> On Mar 29, 2019, at 2:05 PM, Timothy Lukas <timlukas85@gmail.com> wrote:
>
> Mr. McVoy,
>
> I've attached my signed contract here. Please let me know if anything needs to be adjusted.
>
> If it's possible, I would like to be assigned #85 as a first choice, #11 as second choice, or #82 if available.
>
> Thank you very much for the opportunity to join the Lion family. I'm very excited and can't wait to get started. If the offensive playbook is ready, I'd love to know how I can access it to start studying.
>
> Best regards,
>
> Tim Lukas
> <20190327141231.pdf>

On Fri, Mar 29, 2019, 3:01 PM Neil McEvoy <NMcEvoy@bclions.com> wrote:

Thanks for the signed contract.
I will speak with the equipment manager to see what numbers you have asked will be available.

Neil

Sent from my iPhone

> On Mar 29, 2019, at 2:05 PM, Timothy Lukas <timlukas85@gmail.com> wrote:
>
> Mr. McVoy,
>
> I've attached my signed contract here. Please let me know if anything needs to be adjusted.
>
> If it's possible, I would like to be assigned #85 as a first choice, #11 as second choice, or #82 if available.
>

> Thank you very much for the opportunity to join the Lion family. I'm very excited and can't wait to get started. If the offensive playbook is ready, I'd love to know how I can access it to start studying.
>
> Best regards,
>
> Tim Lukas
> <20190327141231.pdf>

[Quoted text hidden]

# EXHIBIT F



10:25
4%
Torey Hunter (C...
+12083802212
Thursday, August 15, 2019
Hey Torey any updated timeline for me?
2:11 PM
Not yet
2:16 PM
Only carrying 3 American wrs that dont pr 1 that does. 3 on roster 1 of which is specialist. 1 on pr
2:17 PM
Tuesday, August 27, 2019
Just checking in Torey. Any update on my status?
5:54 PM
No. Injuries and bye week
Looks like we may load DL as priority. I will let you know
5:56 PM
Ok, we still looking at the time around PR expansion?
I'm staying ready.
5:58 PM
Yes
6:02 PM

# EXHIBIT G



10:26
4%
Torey Hunter (C...
+12083802212
Tuesday, August 27, 2019
Just checking in Torey. Any update on my status?
5:54 PM
T
No. Injuries and bye week
Looks like we may load DL as priority. I will let you know
5:56 PM
Ok, we still looking at the time around PR expansion?
I'm staying ready.
5:58 PM
T
Yes
6:02 PM
OK, great. I'll be ready.
6:08 PM
Wednesday, September 18, 2019
Hey Torey any update or timetable? I'm getting drafted in the xfl Oct 15th so I'd like to get up there & show you guys what I got before then. That way I can keep my options open for the future.
Please lmk. ✊
3:55 PM

10:26
4%
Torey Hunter (C...
+12083802212
Ok, please lmk as soon as possible.
11:57 AM
Thursday, September 26, 2019
Hey Coach, any luck on whether I'll be coming up soon?
4:38 PM
Talkin about next 2 weeks
4:41 PM
Alright, cool. I'm staying ready ✊
4:53 PM
Thursday, October 24, 2019
Where are you a
At?
12:30 PM
Long Beach, California sir.
12:31 PM
Ill be in Orange County. You should pull up.
12:36 PM
TRYOUTS
TOREY HUNTER
DIRECTOR OF PLAYER PERSONEL 

# EXHIBIT 2

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Ethan D. Kirschner (State Bar No. 235556)
Kirschner Law, PC
9696 Culver Blvd. Ste. 301
Culver City, CA 90232

TELEPHONE NO.: (213) 935-0250 FAX NO. (Optional): (213) 986-3106
E-MAIL ADDRESS (Optional): ethan@kirschner-law.com
ATTORNEY FOR (Name): Plaintiff Timothy Lukas

FOR COURT USE ONLY

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
03/26/2021 at 10:49:00 AM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 325 South Melrose Dr.
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County

PLAINTIFF/PETITIONER: Timothy Lukas
DEFENDANT/RESPONDENT: The BC Lions Football Club, Inc., et al.

CASE NUMBER: 37-2021-00011868-CU-FR-NC

Ref. No. or File No.:

## PROOF OF SERVICE OF SUMMONS

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [x] summons
   b. [x] complaint
   c. [x] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [x] other *(specify documents):* Notice of Case Assignment and Case Management Conference; Notice of Eligibility to eFile
3. a. Party served *(specify name of party as shown on documents served):*
   The BC Lions Football Club, Inc., a Canadian corporation
   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Rick LeLacheur, President
4. Address where the party was served:
   10605 City Parkway, Surrey, BC V3T 4C8, Canada
5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* (2) at *(time):*
   b. [x] **by substituted service.** on *(date):* Mar 22, 2021 at *(time):* 11:12 am I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
   Andrew Millin, Video Coordinator
   (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* Mar 25, 2021 from *(city):* Coquitlam, BC **or** [ ] a declaration of mailing is attached.
   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10

**POS-010**

| PLAINTIFF/PETITIONER: Timothy Lukas<br>DEFENDANT/RESPONDENT: The BC Lions Football Club, Inc., et al. | CASE NUMBER: |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):* (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify):* The BC Lions Football Club, Inc.
under the following Code of Civil Procedure section:

☒ 416.10 (corporation)
☐ 416.20 (defunct corporation)
☐ 416.30 (joint stock company/association)
☐ 416.40 (association or partnership)
☐ 416.50 (public entity)
☐ 415.95 (business organization, form unknown)
☐ 416.60 (minor)
☐ 416.70 (ward or conservatee)
☐ 416.90 (authorized person)
☐ 415.46 (occupant)
☐ other:

7. **Person who served papers**

a. Name: Leonard Villegas

b. Address: #2 - 1111 Austin Ave., Coquitlam, BC

c. Telephone number: (604) 931-5997

d. **The fee** for service was: $ 121.28

e. I am:

(1) ☒ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☐ a registered California process server:

☐ owner ☐ employee ☐ independent contractor.

(ii) Registration No.:

(iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: March 26, 2021

Leonard Villegas
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form | Clear this form